## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESTINATION MATERNITY      :
CORPORATION,      :
     Plaintiff,      :
     :      CIVIL ACTION
     v.      :      NO. 12-5680
     :
TARGET CORPORATION, et al.,      :
     Defendants.      :

**March _24___, 2014**                           **Anita B. Brody, J.**

### MEMORANDUM

Plaintiff Destination Maternity Corporation ("DMC") brings suit against Defendants Target Corporation ("Target") and Elizabeth Lange, LLC for infringement of U.S. Patent Nos. RE43,531 (the "'531 Patent") and RE43,563 (the "'563 Patent).[1]  Target moves to stay the litigation pending *inter partes* review by the United States Patent and Trademark Office ("PTO").  For the reasons set forth below, I will grant Target's motion to stay the litigation.

## I.  BACKGROUND

On October 4, 2012, DMC filed suit against Defendants for allegedly infringing the '531 Patent and the '563 Patent.  Both patents relate to maternity pants having a flexible belly panel that can be worn during different stages of pregnancy and different stages of postpartum body changes.  The patents have a common priority date of May 31, 2007 and will naturally expire on August 26, 2027.

On January 23, 2013, the Court held a pretrial scheduling conference pursuant to Federal Rule of Civil Procedure 16.  Following the Rule 16 conference, the Court issued a scheduling order that established the following deadlines:  September 25, 2013 - close of fact discovery;

---

[1] The Complaint initially included claims against Cherokee Inc.  However, on December 18, 2013, the Court entered an order dismissing all claims against Cherokee Inc.  *See* ECF No. 87.

December 13, 2013 - close of expert discovery; and January 29, 2014 - dispositive motions due. ECF No. 33.  The scheduling order did not include deadlines for *Markman* briefs and a *Markman* hearing because the parties agreed that no claim construction was necessary in the case. Additionally, no trial date was set.

On May 6, 2013, DMC served its Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions"), which identified, for the first time, the specific claims of the patents that DMC asserts against Defendants.

On August 27, 2013, Target filed petitions for *inter partes* review, asking the Patent Trial and Appeal Board ("PTAB") to institute *inter partes* review proceedings to invalidate all 29 claims that DMC asserts against Defendants.[2]  The following day, Target filed its motion to stay the litigation in this case pending the resolution of the petitions for *inter partes* review.  At the time Target filed its motion to stay, fact discovery was not complete and expert discovery and depositions had not begun.

On September 13, 2013, DMC filed a response in opposition to Target's motion to stay. In the response, DMC asserted that the case was already at an "advanced stage" because the parties had conducted significant discovery, including DMC's production of over 34,000 pages of documents to Defendants.  Pl.'s Resp. 16.  Additionally, DMC represented that "the vast majority of documentary discovery is complete."  Id. at 4.  However, five days later, the Court approved the parties' joint motion to amend the scheduling order to extend the deadlines for the close of fact discovery until October 25, 2013 and the close of expert discovery until January 14, 2014.  ECF No. 62.  Moreover, within two weeks after claiming that it had completed the "vast

---

[2] Target's IPR petitions seek to invalidate a total of 32 claims.  DMC does not assert three of these claims against Defendants in this case.

majority" of document discovery, DMC produced an additional 80,000 pages of documents to Defendants.

On October 21, 2013, the Court suspended the deadlines for expert discovery and dispositive motions until after it resolved Target's motion to stay.  ECF No. 76.  That same day, the parties filed an emergency motion to also suspend fact discovery.  ECF No. 77.  The parties agreed that they could not complete fact discovery by the October 25, 2013 deadline. Additionally, they agreed that the following fact discovery still needs to occur: "motions to amend contentions and/or service or amended contentions, motions to amend the pleadings and/or service of amended pleadings, completion of noticed depositions, additional productions of documents and information by both parties, additional depositions, discovery from at least one third party, and discovery motions and/or motions for a protective order." *Id.*

In February 2014, the PTAB concluded that there is a reasonable likelihood that Target will prevail with respect to the invalidity of 27 of the 29 claims that DMC asserts against Defendants.  Thus, the PTAB instituted *inter partes* review proceedings for those 27 claims.[3] Although two of the 29 claims at issue in this suit are not currently subject to *inter partes* review, Target intends to file two new petitions for *inter partes* review that demonstrate the invalidity of these two remaining claims based on Japanese prior art that DMC did not disclose to Target until after it filed its original petitions for *inter partes* review.  Target will seek to join these petitions with its existing ones, and believes that all 29 claims will soon be subject to *inter partes* review proceedings.

---

[3] Target challenged the validity of 32 claims in the *inter partes* review petitions.  The PTAB instituted *inter partes* review proceedings for 29 of the 32 claims, including for 27 claims that DMC asserts against Defendants.

## II.  STANDARD OF REVIEW

The decision whether to grant a stay is within the district court's discretion because "it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket."  *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).  "It is well settled that this authority extends to patent cases in which a review or reexamination by the PTO has been requested."  *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 WL 3013343, at *1 (D. Del. June 17, 2013) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).  "[A] court may decide to grant a motion to stay in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive [review]."  *Air Vent, Inc. v. Owens Corning Corp.*, No. 10-1699, 2012 WL 1607145, at *2 (W.D. Pa. May 8, 2012) (internal quotation marks omitted).

## III.  DISCUSSION

In determining whether to stay an action pending *inter partes* review, courts consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."[4] *Innovative Office Prods,. Inc. v. Spaceco, Inc.*, No. 05-4037, 2008 WL 4083012, at *2 (E.D. Pa. Aug. 28, 2008) (internal quotation marks omitted).

### A.  Prejudice and/or Tactical Disadvantage

One consideration is whether a stay will unduly prejudice the non-moving party or place it at a tactical disadvantage.  While a stay always presents a risk of delaying final resolution of a

---

[4] Although courts originally adopted this multi-factor test to analyze motions to stay pending *inter partes* reexamination, courts recognize that the same test applies to decisions whether to grant a motion to stay pending *inter partes* review.  *See, e.g., Davol*, 2013 WL 3013343, at *1.

dispute, "[t]he mere potential for delay, however, is insufficient to establish *undue* prejudice." *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744, 2013 WL 3353984, at *2 (D. Del. July 2, 2013). DMC argues that a stay will place it at a tactical disadvantage and cause it to suffer undue prejudice.

DMC argues that Target intentionally delayed filing *inter partes* review petitions to gain a tactical advantage. A petition for *inter partes* review "made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010). "However, the less time that a party waits to file a motion to stay pending [review], the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012).

On October 4, 2012, DMC filed its Complaint. More than ten months later, on August 27, 2013, Target filed its petitions for *inter partes* review, and a day later it filed its motion to stay. DMC argues that this extended delay between the filing of the Complaint and the filing of the petitions for *inter partes* review leads to an inference that Target's delay was impermissibly tactical. Target points out that, although DMC filed its Complaint in October 2012, DMC waited until May 6, 2013 to serve its Infringement Contentions. Prior to receiving DMC's Infringement Contentions, Target did not know which of the 50 claims in the patents DMC would assert against it.[5] Target argues "it would have been extremely difficult, wasteful, and inefficient for [it], or anyone else, to prepare IPR petitions premised solely on speculation and conjecture as to which claims DMC might later chose to assert." Def.'s Reply 12. Target emphasizes that it took

---

[5] As previously stated, DMC asserts 29 claims against Target.

less than four months to prepare and file its petitions for *inter partes* review once it learned of the claims asserted against.

Under similar circumstances, courts have found that a delay between the filing of the Complaint and the filing of *inter partes* review petitions is not unreasonable.  In *Software Rights Archive, LLC v. Facebook, Inc.*, No. 12-3970, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013), the defendants filed petitions for *inter partes* review almost a year after litigation began, but only four months after the plaintiff had identified the asserted claims. The court found the delay to be reasonable "given the complexity of the claims, prosecution history and prior art." *Id.*  Similarly, in *Semiconductor Energy Laboratory, Co., Ltd. v. Chimei Innolux Corp.*, No. 12-21, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012), the court held that the defendant's ten month delay between the filing of the Complaint and the filing of its first petition for *inter partes* review was reasonable because the defendant waited only three to four months after it learned of the claims asserted against it to file *inter partes* review petitions.  The court explained, "While some delay in filing IPR petitions may have been avoidable, the Court finds the need to assess the disputed claims a valid reason for not filing a petition shortly after the Complaint was filed." *Id.*

Target waited less than four months after learning of the claims asserted against it to file petitions for *inter partes* review.  During the time between learning DMC's Infringement Contentions and filing its petitions, Target prepared its invalidity contentions and conducted third party discovery on prior art, both of which assisted it in preparing to file *inter partes* review petitions.  Target filed its petitions within the statutory time frame,[6] and filed its motion to stay only a day after submitting the petitions.  Target's actions do not give rise to the inference that its

---

[6] "An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."  35 U.S.C. § 315(b).

delay was impermissibly tactical.  In light of these facts, Target's delay was not unreasonable and does not place DMC at an unfair tactical disadvantage.

DMC also alleges that it will be unduly prejudiced by a stay of litigation because Target is a direct competitor.  "[W]hen the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."  *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013); *Air Vent*, 2012 WL 1607145, at *3 ("Courts are more likely to find undue prejudice when the parties are direct competitors.").  However, "the fact that there are other competitors in the market undermines [the] assertion of undue prejudice because of loss of market value." *Air Vent*, 2012 WL 1607145, at *3; *Neste Oil*, 2013 WL 3353984, at *3 ("The presence of multiple active firms in the relevant market . . . may decrease the likelihood of such harm befalling the plaintiff.").  Moreover, "[m]any courts have found . . . that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief." *Zillow, Inc. v. Trulia, Inc.*, No. 12-1549, 2013 WL 5530573, at *6 (W.D. Wash. Oct. 7, 2013).

There is no dispute that DMC and Target are direct competitors.  However, DMC has several other competitors in the market, including H&M, Babies "R" Us, Walmart, Old Navy, J.C. Penny, and Gap.  In 2008, DMC threatened Gap and J.C. Penny with its prospective patent rights, and in 2009, DMC first threatened Target with its prospective patent rights.  Despite these threats against Gap and J.C. Penny, DMC has only filed suit against Target, and has never sued any of its other competitors.  While DMC may experience a loss of market share during a delay in litigation, only a fraction of this loss will be attributable to Target because of the several other

competitors that continue to compete for market share with DMC without repercussions.  While DMC may experience some prejudice as a result of a stay, the multiple competitors in the field belie the assertion that DMC will experience undue prejudice because of loss of market value. "Additionally, "[DMC] never sought a preliminary injunction, which suggests that any prejudice to [DMC] that might result from delaying the ultimate resolution of this dispute is not as severe as it contends." *Ever Win*, 902 F. Supp. 2d at 511; *Studer Prof'l Audio GmbH v. Calrec Audio Ltd.*, No. 12-2278, 2012 WL 3061495, at *2 (D.N.J. July 25, 2012) (a stay is not unduly prejudicial if the parties are direct competitors, but the plaintiff did not seek a preliminary injunction); *but see Davol*, 2013 WL 3013343, at *4 (plaintiff's failure to seek preliminary injunction irrelevant to undue prejudice determination where it is clear that the parties are direct competitors).

Lastly, DMC contends that a stay will cause it to lose a significant portion of its patent term.  However, "all of [DMC's] legal and equitable remedies will be available when the stay is lifted; a stay does not foreclose [DMC] from any remedy." *MonoSol Rx, LLC v. BioDelivery Sciences Int'l, Inc.*, No. 10-5695, 2012 WL 762501, at *10 (D.N.J. Mar. 7, 2012).  Moreover, DMC's patents do not expire until August 26, 2027.  Thus, even after a stay, DMC likely will have over a decade to enforce its patent rights.

In light of the above, this factor weighs in favor of a stay because a stay will not unduly prejudice DMC or place it at a tactical disadvantage.

**B.  Issue Simplification**

The next consideration is whether a stay will simplify the issues in the case and streamline trial.  DMC asserts 29 claims against Target.  The PTAB has instituted *inter partes* review proceedings for 27 of those claims.  DMC argues that a stay will not simplify the issues

because two of the asserted claims are not included in the *inter partes* review proceedings. Target counters that the PTAB's review of 93% of the asserted claims will certainly simplify the issues.  Moreover, Target intends to file two new petitions for *inter partes* review that demonstrate the invalidity of the two claims not currently subject to review.  Target hopes these new petitions will be joined for review with the other petitions if the PTO institutes *inter partes* review proceedings for these two claims.

> There are a number of ways a stay pending *inter partes* review can simplify the issues:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [review] may encourage a settlement without further involvement of the court, (5) the record of the [review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001). "Whatever outcome occurs, there is the potential for the simplification of issues for trial, either by reducing the number of claims at issue, confirming the validity of the surviving claims, or narrowing the scope of a modified claim."  *SenoRx*, 2013 WL 144255, at *3.  Thus, courts have found significant potential for issue simplification even in cases where some but not all of the asserted claims are subject to PTO review.  *See, e.g., Robert Bosch Healthcare Sys., Inc. v. ExpressMD Solutions, LLC*, No. 12-68, 2013 WL 752474, at *4 (N.D. Cal. Feb. 27, 2013) (issues simplified by stay even though the PTO rejected reexamination of some of the asserted claims and one patent-in-suit was not subject to a request for reexamination); *SenoRx*, 2013 WL 144255, at *4-5 (issue simplification factor weighs in favor of stay even though the PTO did not grant request for *inter partes* reexamination of four of the asserted claims).

Regardless of whether the two remaining claims become subject to *inter partes* review proceedings, there is a significant probability that at least one of the claims subject to review will be cancelled because the PTO cannot institute *inter partes* review unless "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). "And even if certain (or all) of the claims are ultimately confirmed, the Court will likely benefit . . . from the PTO's analysis of prior art that is later presented to the Court," *SenoRx*, 2013 WL 144255, at *4, because "the PTO has acknowledged expertise in evaluating prior art and assessing patent validity." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 548 (Fed. Cir. 2011). Although there may be issues or defenses that cannot be addressed through *inter partes* review, the PTO's review of 93% of the asserted claims will very likely provide significant simplification of the issues. Therefore, this factor weighs in favor of a stay.

## C. Stage of Litigation

The last consideration is whether discovery is complete and a trial date has been set. Courts are most likely to grant a stay when a case is in an early stage of litigation. *Id.* at *5. In assessing the stage of litigation, courts routinely consider whether discovery is complete, whether a trial date has been set, the status of pending pretrial motions, and pretrial orders. *Visual Interactive Phone Concepts, Inc. v. Samsung Telecomms. Am., LLC*, No. 11-12945, 2012 WL 1049197, at *4 (E.D. Mich. Mar. 28, 2012). Staying a case that is in an early stage of litigation "advance[s] judicial efficiency and maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *SenoRx*, 2013 WL 144255, at *5 (internal quotation marks omitted). However, once "the Court and the parties have already

expended significant resources on the litigation . . . the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion."  *Id.*

A case need not be in its infancy to warrant a stay.  Courts often find the stage of litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court, even when the parties and/or the court have already devoted substantial resources to the litigation.  *See Zillow*, 2013 WL 5530573, at *5-6 (stage of litigation weighs in favor of a stay because of "the significant amount of discovery, claim construction analysis, and motions practice that still lies ahead," even though parties produced well over 100,000 pages of documents, retained experts, engaged in dispositive motions practice, and had a trial date); *EI Du Pont De Nemours & Co. v. MacDermid Printing Solutions LLC*, No. 10-3409, 2012 WL 2995182, at *7-8 (D.N.J. July 23, 2012) (stage of litigation weighs in favor of a stay because "[n]either fact nor expert discovery is complete, a trial date has not been set and a *Markman* decision has not been rendered," even though the plaintiff spent time significant resources drafting *Markman* brief and the court spent significant time managing the litigation); *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach., Inc.*, 02-74796, 2003 WL 22870902, at *4 (E.D. Mich. Oct. 7, 2003) (stage of litigation weighs in favor of a stay because "far more time and resources remain to be spent before this matter is concluded," even though the parties completed a substantial amount of discovery and submitted witness lists and summary judgment motions).  "[C]ourts have granted stays even where discovery has been completed and even when a trial date has been scheduled or is forthcoming."  *Ralph Gonnocci*, 2003 WL 22870902, at *2.

DMC contends that this factor weighs against a stay because the case is in an advanced stage of litigation.  In contrast, Target asserts that the case is still in an early stage of litigation

and that a stay is necessary to conserve the resources of the parties and the Court.  Although the parties have already conducted a significant amount of discovery, fact and expert discovery is nowhere near complete.  The parties have not yet filed any dispositive motions and a trial date is not set.   The Court has conducted only two conferences with the parties and resolved only one disputed motion.  Moreover, the Court has not had to resolve any discovery disputes.  Up to this point, the Court has invested limited resources in this case.  If litigation continues without a stay, the parties and the court will have to expend a considerable amount of resources on discovery, motions practice, and trial.  The grant of a stay will avoid the potential waste of judicial and litigant resources.  Given the substantial amount of work that lies ahead, the stage of the litigation weighs in favor of a stay.

## IV.  CONCLUSION

In sum, all three factors weigh in favor of a stay.  Therefore, I will grant Target's motion to stay the litigation pending *inter partes* review by the PTO.

**s/Anita B. Brody**

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: